TROY LAW, PLLC
John Troy (JT 0481)
Aaron B. Schweitzer (AS 6369)
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff and proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
HUAYUN TAN,
*on behalf of himself and others similarly situated,*
                                          Plaintiff,

              v.

STARLIGHT TOURS INC.,
LI FANG ZHANG
      a/k/a Lifang Zhang, and
LEO LIN,
                                        Defendants.
------------------------------------------------------------------x

Case No. 20-cv-05557

**29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION**

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff Huayun Tan (hereinafter "Tan"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants Starlight Tours Inc. (hereinafter the "Corporate Defendant"), LI FANG ZHANG a/k/a Lifang Zhang (hereinafter "Zhang"), and Leo Lin (hereinafter "Lin"), (hereinafter collectively the "Individual Defendants," collectively with the Corporate Defendant the "Defendants"), and alleges as follows:

## INTRODUCTION

        1.       Tan brings this action on behalf of himself and other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and of the New York Labor Law ("NYLL"), N.Y. Lab. L., arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

1

2. Tan alleges pursuant to FLSA that he is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) liquidated damages, (3) unreimbursed expenses, (4) prejudgment and postjudgment interest, and/or (5) reasonable attorneys' fees and costs.

3. Tan further alleges pursuant to NYLL and Section 142 of Title 12 of the New York Codes, Rules, and Regulations (the "Wage Order") that he is entitled to recover from Defendants: (1) unpaid minimum wages, (2) liquidated damages, (3) unreimbursed expenses, (4) penalties for failure to provide a wage notice at time of hire, (5) penalties for failure to provide wage statements with each payment of wages, (6) prejudgment and postjudgment interest, and (7) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

5. This Court has supplemental jurisdiction over Tan's state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

6. Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York.

## PLAINTIFF

7. Tan was employed by the Defendants from on or about April 13, 2019 through on or about July 24, 2019 to work as a driver for Defendants' bus company.

## DEFENDANTS

**CORPORATE DEFENDANT**

8. Corporate Defendant is a domestic business corporation with a registered address for service of process and principal place of business at 119-46 27th Avenue, Flushing, NY 11354.

9. Corporate Defendant was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00 per year, because operated 365 days per year, had more than 10 employees, and paid those employees flat rates of $150.00 per day. Paying all of these wages would cost more than $500,000.00 per year, and in order to stay in business Corporate Defendant would need to take in more revenue than it paid out in wages.

10. Corporate Defendant is a business engaged in interstate or foreign commerce, as it provided bus service between New York on the one hand and locations in New York, Massachusetts, New Jersey, Maryland, Washington, D.C., and Virginia on the other.

**INDIVIDUAL DEFENDANTS**

11. Lin and Zhang are husband and wife, respectively.

12. Zhang is a part-owner of, the Chief Executive Officer of, and an active manager at Starlight Tours, and in those roles (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

13. Zhang acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with the Corporate Defendant.

14. Lin is a part owner of the Corporate Defendant, and an active manager at Starlight Tours, and in that role (1) had the authority to hire and fire employees, (2) supervised and

controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

15. Lin hired Tan to work for Starlight Tours.

16. Lin acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with the Corporate Defendant.

**STATEMENT OF FACTS**

17. Tan was employed by the Defendants from on or about April 13, 2019 through on or about July 24, 2019 to work as a driver for Defendants' bus company.

18. Tan was hired on or about April 13, 2019 by Lin.

19. At the time he was hired, Tan was not given a wage notice, either in English or in his primary language of Chinese, that included all of the following information: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

20. Tan was not given such a wage notice at any time during his employment after his hiring.

21. Throughout his employment, Lin kept a log of the hours he worked each day.

22. Lin's work schedule varied depending on what routes he was assigned to drive, but on average he worked about 13 hours per day and about 63 hours per week.

4

23. Most commonly, Lin would begin driving his route at around 7:45 AM and finish driving his route at about 9:15 PM, and most commonly, Lin would work either 6 or 7 days per week (considered as Monday through Sunday).

24. Both on average and most commonly, Tan worked a spread of time greater than 10 hours 4 days per week.

25. Throughout his employment, Lin was paid a daily salary depending on which route he drove.

26. Tan kept a record of how much he was paid per day.

27. For days when he drove non-charter routes within the State of New York, Tan was paid $150.00.

28. For days when he drove charter routes, which were typically interstate, Tan was typically paid $270.00.

29. Of the days he worked, Tan was paid:

   a. $50.00 per day for 1 day;
   b. $75.00 per day for 1 day;
   c. $150.00 per day for 30 days;
   d. $200.00 per day for 3 days;
   e. $220.00 per day for 2 days;
   f. $225.00 per day for 1 day;
   g. $230.00 per day for 1 day;
   h. $270.00 per day for 9 days;
   i. $280.00 per day for 1 day;
   j. $300.00 per day for 1 day;
   k. $320.00 per day for 2 days;
   l. $350.00 per day for 1 day; and
   m. $370.00 per day for 1 day;

30. On average, Tan was paid approximately $875.00 per week.

31. Tan's average weekly pay divided by his average weekly hours amounts to an hourly rate of about $13.89 per hour.

5

32. In 2019, the minimum wage for employers in New York City with more than 10 employees was $15.00 per hour.

33. Tan's daily rates did not include an additional hour's pay at the minimum wage on days when his spread-of-time exceeded 10 hours.

34. For the weeks beginning May 13, 2019 (during which Tan worked 80.75 hours), May 20, 2019 (during which Tan worked 49.33 hours), June 24, 2019 (during which Tan worked 80.70 hours), and July 1, 2019 (during which Tan worked 63.40 hours), Tan was not paid anything.

35. Additionally, Tan was not paid anything for: May 28, 2019 (during which he drove 13.83 hours between 5:00 AM and 6:50 PM); June 4, 2019 (during which he drove 3.50 hours between 9:00 AM and 12:30 PM); June 5, 2019 (during which he drove 12.75 hours between 7:15 AM and 8:00 PM); and June 12, 2019 (during which he drove 13.25 hours between 6:45 AM and 8:00 PM), though he did receive other payments for days worked during the weeks in which those days fell.

36. Tan was required to bear job-related expenses, most often the expense of refueling the bus, but also on occasion hotel bills when his routes ended outside New York and cab fare between the hotels and the depots where the busses he would need to drive back to New York were parked.

37. On average, these expenses amounted to about $670.00 per week.

38. Tan was paid once every 2 weeks.

39. In addition to failing to furnish Tan a wage notice, Defendants failed to provide Tan a wage statement with each payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

40. Defendants did require Tan to fill out so-called daily working reports that recorded the days he worked, his route, the wage he was paid for each day, and his out-of-pocket expenses.

41. The daily working report indicated that Tan's out-of-pocket expenses would be reimbursed, by Tan was not reimbursed his out-of-pocket expenses.

42. Defendants committed the foregoing acts knowingly, intentionally, willfully, and maliciously against Tan, the Collective, and the Class.

## COLLECTIVE ALLEGATIONS

43. Tan brings this action individually and on behalf of all other current and former non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

44. Tan brings his state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

45. The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

**NUMEROSITY**

46. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

47. Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

**COMMONALITY**

48. There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members were paid less than the minimum wage; (3) whether the Class members were paid an extra hour's pay at the minimum wage for each day their spread of time exceeded 10 hours; (4) whether the Class members paid expenses out of pocket, were promised reimbursement, and were not reimbursed; (5) whether the Class members were provided with wage notices adequate under Section 195.1 of the NYLL; (6) whether the Class members were provided with wage statements adequate under Section 195.3 of the NYLL; and (7) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

**TYPICALITY**

49. Tan's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

50. All the Class members were subject to the same policy and practice of denying minimum wage.

51. Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

52. Tan and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

**ADEQUACY**

53. Tan is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

54. Tan is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

**SUPERIORITY**

55. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

56. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

57. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

58. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

59. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the

impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

60. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

61. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

62. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

63. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

64. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION
### I. VIOLATION OF SECTION 206 SUBSECTION A OF THE FLSA NONPAYMENT OF MINIMUM WAGE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Section 206, Subsection (a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at… $7.25 an hour, beginning 24 months after [the] 60th day [after May 25, 2007]."

67. Tan was not paid anything for four weeks out of his employment.

68. Further, for at least some weeks out of his employment, the unreimbursed expenses brought Tan's calculated hourly wages below the federal minimum wage.

69. Accordingly, Defendants paid Tan less than the federal minimum wage for some weeks out of his employment.

70. Section 216 of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

71. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Tan at least the minimum wage.

**II.     VIOLATION OF SECTION 652 OF THE NYLL AND 142-2.1 OF THE WAGE                                                                                                      ORDER NONPAYMENT OF MINIMUM WAGE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS**

72. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Section 652.1, Subsection (b) of the NYLL provides that "[e]very employer shall pay to each of its employees for each hour worked in the counties of Nassau, Suffolk, and Westchester a wage of not less than… $12.00 per hour on and after December 31, 2018, [and] $13.00 per hour hon and after December 31, 2019."

74. Similarly, Section 142-2.1, Subsection (a), Paragraph (1), Subparagraph (i) of the Wage Order provides that "The basic minimum hourly rate shall be, for each hour worked in New

York City for large employers of eleven or more employees, $15.00 per hour on and after December 31, 2018."

75. Throughout his employment, with the exception of the weeks beginning April 8, 2019, April 15, 2019, April 29, 2019, May 6, 2019, and June 10, 2019, Tan's weekly pay divided by the hours he worked amounted to less than $15.00 per hour.

76. Further, throughout his employment, the unreimbursed expenses brought Tan's calculated hourly wages below the applicable New York minimum wage.

77. Accordingly, Defendants paid Tan less than the applicable New York minimum wage for throughout his employment.

78. Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

79. Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Tan at least the minimum wage.

**III. VIOLATION OF SECTION 198-C OF THE NYLL FAILURE TO PROVIDE AGREED-UPON BENEFITS—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS**

80. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Section 198-c, Subsection 1 of the NYLL provides that "[i]n addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement to

pay or provide benefits or wage supplements to employees… for the benefit employees and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days after such payments required to be made, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section one hundred ninety-eight-a of this article."

82. This statute has been interpreted by the Courts of the State of New York to impose on an employer the requirement to "abide by the terms of his agreement to provide benefits." *Glenville Gage v. Industrial Board of Appeals*, 70 A.D. 2d 283, 286 (3d Dept. 1979), *aff'd* 52 N.Y. 2d 777 (1980).

83. Defendants agreed to reimburse Tan for his out-of-pocket expenses.

84. Defendants required Tan to record his out-of-pocket expenses so that he could be reimbursed.

85. Despite this, Defendants did not reimburse Tan for his out-of-pocket expenses.

86. Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

87. Defendants are liable to Tan for his unreimbursed out-of-pocket expenses.

88. Defendants knowingly, willfully and maliciously failed to reimburse Tan his out-of-pocket expenses.

## IV. VIOLATION OF SECTION 195.1 OF THE NYLL FAILURE TO FURNISH WAGE NOTICE—BROUGHT ON BEHALF OF THE PLAINTIFF

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

90. Section 195.1(a) of the NYLL provides that "[e]very employer shall provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

91. Section 198, Subsection 1-b of the NYLL provides that "[i]f any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section on hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees. The court may also award other relief, including injunctive or declaratory relief, that the court in its discretion deems necessary and appropriate."

92. Tan was not provided a wage notice as provided by Section 195.1 of the NYLL within the first 10 business days of his employment or at any time thereafter.

93. Defendants knowingly, willfully and maliciously failed to provide Tan a wage notice as provided by Section 195.1 of the NYLL within the first 10 business days of his employment or at any time thereafter.

### V. VIOLATION OF SECTION 195.3 OF THE NYLL FAILURE TO FURNISH WAGE STATEMENTS—BROUGHT ON BEHALF OF THE PLAINTIFF

94. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Section 195.3 of the NYLL provides that "[e]very employer shall furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked."

96. Tan was not furnished a wage statement with each payment of wages.

97. Defendants knowingly, willfully and maliciously failed to furnish Tan a wage statement as provided by Section 195.3 of the NYLL with each payment of wages.

### DEMAND FOR TRIAL BY JURY

98. Tan demands a trial by jury on all matters so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Tan, on behalf of himself and on behalf of the Collective, respectfully requests that this Court enter a judgment providing the following relief:

A. At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt restaurant workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime pay;

B. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

C. An injunction against Corporate Defendant, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

D. An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and any opt-ins under FLSA;

E. An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and the Class under NYLL and the Wage Order;

F. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

G. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Class under NYLL and the Wage Order;

H. An award of misappropriated tips, and liquidated damages equal to misappropriated tips, due to Plaintiff and any opt-ins under FLSA;

I. An award of misappropriated tips, and liquidated damages equal to misappropriated tips, due to Plaintiff and the Class under NYLL and the Wage Order;

J. An award of unpaid spread-of-time, and liquidated damages equal to unpaid spread-of-time, due to Plaintiff and the Class under the NYLL and the Wage Order;

K. An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage notice at time of hire or thereafter;

L. An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage statement with each payment of wages;

M. An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

N. An award of reasonable attorneys' fees and costs;

O. An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no appeal then being pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL; and

P. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
November 15, 2020

                TROY LAW, PLLC
                *Attorneys for Plaintiff and proposed FLSA Collective*

                /s/ John Troy
                John Troy
                41-25 Kissena Boulevard, Suite 103
                Flushing, NY 11355(718) 762-1324
                troylaw@troypllc.com